UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRETT D.,

    Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

Case No. 19 C 8352

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Brett D. seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") based primarily on his psychological problems. Brett seeks reversal and remand for an award of benefits or further proceedings. The Commissioner filed a motion for summary judgment, asking the Court to affirm the ALJ's denial of benefits. For the reasons that follow, the Court grants in part Brett's request for reversal and remand and denies the Commissioner's motion [17].

## BACKGROUND[1]

Brett, now 43 years old, suffers from severe major depression and anxiety disorder with panic attacks. He has been diagnosed with anxiety induced vomiting and a possible eating disorder has been noted. His anxiety causes his mind to race and sleep disturbances. He also has a history of alcohol abuse. Brett has attended therapy sessions and been prescribed numerous psychotropic medications to treat his mental conditions, including Lexapro, Celexa, trazodone, Xanax, clonazepam, Seroquel, Zyprexa, risperidone, gabapentin, Prozac, hydroxyzine, and nortriptyline.

---

[1] Because Brett challenges only the ALJ's assessment of his mental limitations, the Court focuses on the evidence related to his mental condition.

Brett graduated from college with a degree in business and previously worked as a mortgage loan originator and financial services sales representative.

On January 3, 2019, the ALJ issued an unfavorable decision denying Brett's claim for DIB. (R. at 13-21). In his written decision, the ALJ relied on the standard five-step analysis. At step one, the ALJ determined that Brett has not engaged in substantial gainful activity since May 1, 2016. *Id*. at 15. At step two, the ALJ found that Brett has the severe impairments of anxiety disorder and depressive disorder. *Id*. at 16. At step three, the ALJ determined that Brett's mental impairments do not meet or medically equal the severity of any of the listed mental impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 16-17. The listed mental impairments the ALJ considered were 12.04 (depression) and 12.06 (anxiety). The ALJ considered whether the severity of Brett's mental impairments satisfied the "paragraph B" criteria. The ALJ found that Brett has a mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a mild limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing oneself. *Id*.

The ALJ then concluded that Brett retains the residual functional capacity ("RFC") to perform light work except he cannot perform work requiring more than simple workplace judgment and is limited to simple work related decisions, simple routine repetitive tasks, few if any workplace changes, no rapid production quotas, and brief and superficial interaction with the public, coworkers, and supervisors. (R. 17-21). Based on this RFC, the ALJ found at step four that Brett is unable to perform his past relevant work as a mortgage loan originator and financial services representative. *Id*. at 21. At step five, the ALJ found that there are unskilled, sedentary jobs that exist in significant numbers in the national economy that Brett could perform, including packer, assembler, and sorter. *Id*. at 22. As a result, the ALJ denied Brett's application for DIB.

*Id*. at 23. The Appeals Council denied his request for review, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 1-6; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2017).

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotations omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted). "Although this standard is generous, it is not entirely

uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

Brett challenges the ALJ's weighing of the medical opinion evidence, arguing that that the ALJ erred in rejecting Jada Butler's opinion. As a licensed professional counselor ("LPC"), Butler is not an acceptable medical source under the regulations. SSR 06-3p, 2006 WL 2329939, at *1 (Aug. 9, 2006). An ALJ may consider evidence from other sources, such as therapists, social workers, nurse practitioners, or physician assistants, if their "special knowledge of the individual" allows them to "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* at *2. SSR 06-03p provides that "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source.'" *Id*. at *5. The ALJ was required to minimally articulate his reasons for rejecting Butler's opinion. 20 C.F.R. § 404.1527(f)(2); *Sosh v. Saul*, 818 F. App'x 542, 547 (7th Cir. July 14, 2020).

Prior to providing her opinions on January 30, 2017, Butler saw Brett six times, on September 21, 2016, October 12, 2016, October 26, 2016, November 9, 2016, December 6, 2016, and January 24, 2017. (R. 522-43). Brett had also been treated by another provider in the same office on four occasions beginning on June 7, 2016. *Id*. at 506-21. On January 30, 2017, Butler completed a Mental Impairment Questionnaire, indicating that Brett had marked restriction of activities of daily living; moderate difficulties in maintaining social functioning; marked deficiencies of concentration, persistence, or pace; and continual episodes of deterioration or decompensation in work or work-like settings. *Id*. at 437. Butler diagnosed major depression and generalized anxiety disorder with panic attacks. *Id*. at 435. Butler stated that Brett had significant

4

anxiety with panic attacks and unexplained memory loss had significantly impacted his daily life and functioning. *Id*. The symptoms Butler checked were poor memory, sleep disturbance, emotional lability, decreased energy, mood disturbance, recurrent panic attacks, persistent irrational fears, difficulty thinking or concentrating, obsessions or compulsions, feelings of guilt/worthlessness, generalized persistent anxiety, oddities of thought, perception, speech, or behavior, appetite disturbance with weight change, illogical thinking or loosening of associations, and daily vomiting with anxiety. *Id*.

Butler opined, among other things, that Brett was markedly limited in maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and setting realistic goals or making plans independently of others. (R. 436). Brett explained the medical/clinical findings that support her markedly limited assessment as: "Having difficulty with memory, constant tremors, daily anxiety vomiting, fear, not sleeping, emotionally labile." *Id*. Additionally, she estimated that Brett would be absent from work more than three times per month as a result of his mental impairments. *Id*. Brett's symptoms would also interfere with the attention and concentration needed to perform even simple work tasks 21% or more on a daily basis. *Id*. at 437.

The ALJ stated that he assigned little weight to LPC Butler's opinions. The ALJ gave two reasons for discounting Butler's opinions. First, the ALJ stated that he assigned little weight to the opinions because they were "inconsistent with the overall evidence of record including the progress notes from Jada Butler . . . which noted improvement with treatment and medication."

5

(R. 21). Second, the ALJ found that the later consultative examination's findings did not support Butler's opinions regarding Brett's mental residual functional capacity. *Id*.

Brett challenges the ALJ's assessment of Butler's opinions. The Court agrees that the ALJ's explanations for giving Butler's opinions little weight are inadequate. As an initial matter, the Court notes that the ALJ did not reject Butler's opinions in their entirety. Butler's opinion that Brett has moderate difficulties in maintaining social functioning is consistent with the ALJ's finding that Brett has a moderate limitation in interacting with others. (R. 16, 437). An ALJ need not accept the entirely of a single provider's opinion. *Stephens v. Colvin*, 2016 WL 1271050, at *10 (N.D. Ill. Mar. 29, 2016), *aff'd*, 671 F. App'x 390 (7th Cir. 2016). "But the ALJ must explain the logical bridge between the evidence and a decision to give different weights to different parts of a medical opinion so as to allow for meaningful review." *Diaz v. Berryhill*, 2017 WL 1652577, at *3 (N.D. Ill. May 1, 2017). The ALJ did not explain why he credited the part of Butler's opinion that Brett would be moderately limited in maintaining social functioning, but not the remaining parts that supported a finding of disability.

In support of his conclusion that Butler's findings were unsupported by her own records "which noted improvement with treatment and medication," the ALJ cited generally to Exhibits 10F and 13F which consist of 95 pages of mental health treatment records from June 7, 2016 to August 2, 2018. However, the ALJ did not cite any specific treatment notes within these exhibits as support. *Koppers v. Colvin*, 2013 WL 4552505, at *12 n. 3 (N.D. Ill. Aug. 28, 2013) (ALJ's citation to "two exhibits that comprise nearly fifty pages of doctors' notes" fails to satisfy the ALJ's duty to build an accurate and logical bridge between the evidence and the result, even if evidence exists in the record to support the ALJ's decision). Earlier in the decision, the ALJ summarized the last four of Butler's records between March 23, 2017 and July 11, 2017. But the

ALJ built no bridge between the evidence he cited and his conclusion that Butler's opinions are entitled to little weight based on improvement. For example, the ALJ does not explain what evidence of improvement is inconsistent with Butler's finding that Brett is markedly limited in his ability to perform activities within a schedule, maintain regular attendance, sustain an ordinary work routine, and complete a normal workday and workweek without interruptions from psychologically based symptoms. (R. 436). Likewise, the ALJ does not cite evidence of improvement that is inconsistent with Butler's finding that Brett's mental impairments would cause him to be absent more than three days per month. *Id*. Without more specific explanation from the ALJ, the ALJ's reference to "improvement with treatment and medication" is vague and insufficient to support discounting Butler's opinions. *Czarnecki v. Colvin*, 595 F. App'x 635, 544 (7th Cir. 2015).

Nevertheless, the Commissioner asks the Court to confirm because, according to the Commissioner, "[w]hen read in context, following the ALJ's discussion of the evidence, it is clear what evidence the ALJ found inconsistent with Ms. Butler's opinions." Doc. 18 at 9. The Commissioner then offers reasons not relied upon by the ALJ in weighing Butler's opinions, such as Butler recorded that Brett's attention and concentration were good on three occasions (September 21, 2016, May 30, 2017, and July 11, 2017). *Id*.; (R. 523, 526, 558, 629). The Commissioner cannot defend the ALJ's decision on a ground not offered by the ALJ. *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) ("the ALJ's decision cannot be defended on a basis not articulated in her order."); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016). Nevertheless, the Court agrees that this inconsistency could provide a valid reason for rejecting Butler's opinion that Brett had marked deficiencies of concentration, persistence, or pace and his symptoms would interfere with the attention and concentration needed to perform even simple work tasks 21% or

7

more of a workday. But even if the ALJ had expressly relied on the evidence and reason cited by the Commissioner, this one inconsistency does not undermine Butler's entire opinion. This point only addresses Butler's opinion in one area (attention and concentration) and does not mention her other findings which show that Brett did not have the mental capacity to engage in full-time work on a consistent basis.

Putting aside the ALJ's failure to identify specific portions of the record which are inconsistent with Butler's findings, the main problem with the ALJ's analysis of Butler's opinions is that it ignores the medical record as a whole and fails to consider the episodic nature of Brett's mental illness. In assigning weight to an opinion, the ALJ must consider consistency "with the record as a whole." 20 C.F.R. § 404.1527(c)(3). Individuals with mental illness often have good and bad days, and a temporary improvement should not be taken by itself as evidence of the mental capacity to engage in work on a sustained basis. *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010) ("Many mental illnesses are characterized by 'good days and bad days,' rapid fluctuations in mood, or recurrent cycles of waxing and waning symptoms.") *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic illness, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days. . . . Suppose that half the time she is well enough that she could work and half the time she is not. Then she could not hold down a full-time job."). "Courts have often remanded where an ALJ failed to consider the possible episodic nature of symptoms, particularly in cases of mental illness." *Falicia T. v. Saul*, 2019 WL 5682841, at *7 (N.D. Ill. Nov. 1, 2019).

Moreover, improvement alone does not necessarily mean that Brett is not disabled. "[I]mprovement is a relative concept and, by itself, does not convey whether or not a patient has recovered sufficiently to no longer be deemed unable to perform particular work on a sustained

basis." *Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 960 (11th Cir. 2016); *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("one's medical condition could improve drastically, but still be incapable of performing . . . work."). "The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy*, 759 F.3d at 819; *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce."). In making this determination, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

While the record here shows some temporary improvements in Brett's mental health symptoms, the evidence does not suggest sustained improvement to the point that he could perform full-time unskilled work as stated in the RFC. Rather, the medical record documents the fluctuation in Brett's symptoms and his ability to function on a consistent basis even while treated with medication and counseling. The ALJ failed to account for how the episodic nature of Brett's mental illness impacted his ability to perform work on a sustained basis. Thus, the record as a whole and the totality of Butler's treatment notes do not justify the ALJ's wholesale rejection of Butler's opinion based on improvement.

As the ALJ noted, Brett sought treatment at In Step Behavioral Health with psychiatrist Judith Rossbach, M.D., on June 7, 2016. (R. 18, 506). Brett reported that he had been recently hospitalized on May 4, 2016 for anxiety. *Id*. at 506. He stated that he was "hitting rock bottom" and could not sleep, lost 15 pounds in two months, did not have an appetite, had tightening of his chest, sweating, shaking, racing thoughts, panic attacks, and felt like he was going to throw up in

9

the mornings. *Id*. He said he had been dealing with these symptoms "all my life" and started getting treatment in 2000. *Id*. Dr. Rossbach diagnosed severe major depression and generalized anxiety disorder with panic attacks. *Id*. She recommended Brett continue Celexa and clonazepam, start gabapentin, and start counseling and discouraged alcohol use. *Id*. at 509.

The ALJ cited Dr. Rossbach's treatment note a week later on June 15, 2016 as evidence that Brett was doing better with treatment and medication. (R. 18, 510). At that time, Brett reported that he had a "good week" and his anxiety symptoms were improved. *Id*. Dr. Rossbach noted that Brett's anxiety and mood were better after starting gabapentin and he had not had any panic attacks since then. *Id*. She recommended that Brett continue gabapentin but increased his Citalopram dosage from 20 mg to 30 mg daily. *Id*. The ALJ failed to mention, however, that at the next visit on July 13, 2016, Brett felt that he was only 50% better and he was still throwing up 2-3 times a week because of anxiety. *Id*. at 514. On days when he threw up, Brett had cold sweats, a heavy chest, tight throat, and racing thoughts in the morning. *Id*. He also reported that he could go three days without eating. *Id*. Dr. Rossbach noted that gabapentin had helped but increased his gabapentin from 300 mg to 600 mg at bedtime and continued Citalopram. *Id*. at 517.

The ALJ did not mention that Brett continued to report ongoing mental health symptoms at eight appointments between August 17, 2016 and February 12, 2017, despite occasionally experiencing some reduction in symptoms. (R. 518-19) (8/17/2016 - "rough morning, has been throwing up," "the week was rough. . . Lost 7 lbs. Didn't eat," "mood feels better."); *id*. at 522 (9/21/2016 – "I am about the same," "still vomiting and not eating due to stress and anxiety he feels," "He has racing thoughts which wake him"); *id*. at 528 (10/12/2016 – "Says he is not sleeping very well," "Still with vomiting and anxiety especially during the night," "Pacing during the day," "Cannot sit still."); *id*. at 531 (10/26/2016 – "I am not any better," "He is feeling bad.

10

He is still not sleeping. His wife is here with him. He is confused," "He says he is not functioning," "He wakes and vomits."); *id*. at 534 (11/9/2016 – "He is sleeping better," "He did not eat for 4 days last week to hope it would help with his nausea and vomiting," "He says overall he is better but is still not functioning," wife "says he seems better overall."); *id*. at 537 (12/6/2016 – "Not sleeping well," "Still with vomiting daily."); *id*. at 542 (1/24/2017 – "I guess I am somewhat better but I am still vomiting," "He is still with anxiety," "He says he 'vomits every morning to calm myself,'" "He is afraid to eat because he says he will have to vomit," "Wakes with anxiety every morning and then vomits to feel better."); *id*. at 544 (2/21/2017 - "Still with anxiety that wakes him. He is pacing during the day still. He is not eating. Still with some mood issues."). These treatment records document the waxing and waning nature of Brett's symptoms. *See id*. at 518 (8/17/2016 – "Has his bad days."); *id*. at 522 (9/21/2016 – "He has times where he is good and then times where it worsens."); *id*. at 528 (10/12/2016 – "Mood is up and down."); *id*. at 540 (1/24/2017 – "He says he has some good nights and some bad nights."); *id* at 544 (2/21/2017 – "He feels like his mood is still up and down.").

During this six-month period, Brett's medications were also adjusted on multiple occasions. (R. 520, 524, 530, 539, 542, 546). The evidence as a whole reveals that medical professionals frequently adjusted and/or increased Brett's medications which undermines the ALJ's conclusion that his treatment and medications suggested overall effectiveness. SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017), ("[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications . . . may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."); *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) ("a claimant's election to undergo serious treatment, such as ... 'taking heavy doses of strong drugs,' indicates that the claimant's complaints of pain are

likely credible," and "the fact that physicians willingly prescribed drugs . . . indicated that they believed the claimant's symptoms were real.").

The ALJ failed to mention that on March 24, 2017, Brett checked himself into a hospital "due to feeling overwhelmed, anxiety at all-time high." (R. 698). Brett was monitored overnight and released the next morning. *Id*. The ALJ noted that on April 4, 2017, Brett reported feeling better. *Id*. at 19, 552. But at the same time, the ALJ neglected to mention that the day before on April 3, 2017, Brett presented to the emergency room with anxious, blunted, and guarded mood, impaired concentration, and hesitant eye contact. *Id*. at 694. Brett reported difficulty taking care of himself. *Id*. Brett started a mental health intensive outpatient program on April 5, 2017 that lasted 13 days when he was discharged due to lack of attendance. *Id*. at 690-817. The ALJ pointed out reports by Brett on May 30, 2017 that he was doing okay and felt his anxiety was better. (R. 19, 556). The ALJ did not acknowledge that during that session, Brett also said he was feeling "up and down" and his Prozac prescription was increased from 10 mg daily to 40 mg daily. *Id*. at 554, 558

The ALJ noted that during a July 11, 2017 visit, Brett had no depression, his anxiety had improved, he was sleeping better, and he was alert, oriented, cooperative, and pleasant. *Id*. at 20, 627. The ALJ's and the Commissioner's statements that Brett's "anxiety had improved" on July 11, 2017 are factually inaccurate. *Id*; doc. 18 at 6. Contrary to their statements, Brett told Butler that he was "still struggling with anxiety," "wakes with anxiety," "still vomiting when he wakes." *Id*. at 627. Butler noted that Brett's GAD-7 score had increased from 9 to 16 since his last visit, and she directed him to continue Prozac and increased his risperdone to 1 mg at night. *Id*. at 625, 629.

At his next visit on August 15, 2017, Dr. Georgina Srinivas Rao observed that Brett's mood was depressed and his affect was restricted. *Id*. at 633. As a result, Dr. Rao added nortriptyline 10 mg at bedtime and directed Brett to continue Prozac at 40 mg a day and risperidone 1 mg a night. *Id*. at 634. The ALJ then focused on a report by Brett that he was "doing better" and "felt like a new man" on September 5, 2017 after he had been hospitalized in August 2017 for alcohol withdrawal seizure and underwent detox with gabapentin for anxiety. *Id*. at 20, 635. Similarly, on March 1, 2018, Brett reported "feeling really well." *Id*. at 20, 640. Yet, the ALJ neglected to mention that Brett stated that he had been having "so much" issues with his anxiety and depression that he "started leaning towards alcohol" and was hospitalized beginning in January 2018 for 30 days and then received two weeks of intensive outpatient treatment. *Id*. 598-621, 640. The ALJ also did not acknowledge a progress note from January 23, 2018 stated that Brett "is unable to effectively manage his anxiety or depression." *Id*. at 602.

The ALJ failed to discuss the next treatment note on March 20, 2018, which suggested significant symptoms, not sustained improvement. It says, "last week his family and him were in close contact with this office . . . He reported high 'anxiety' and was bedbound, panicked." (R. 645). Brett was on Antabuse and Seroquel and directed to continue his prescriptions for risperidone, fluoxetine, gabapentin, and hydroxyzine, and return in one month. *Id*. at 649. The ALJ failed to mention that two months later on May 31, 2018, while Brett reported that "things have been good," he also stated that it is "really hard to manage his sobriety and anxiety." *Id*. at 650. The ALJ did not mention Brett's next appointment on June 20, 2018 at which he reported that "anxiety and depression are a daily struggle." *Id*. at 655. Brett stated that he was not drinking and was using "all of his energy to just manage basic emotions and maintain a balance with mood

13

and anxiety management." *Id*. He reported that "even small stressors and changes to [his] day challenge his anxieties, worries, GI symptoms, and his memory impairments." *Id*.

In sum, the ALJ's first explanation for why he rejected Butler's opinions ignores the medical record as a whole and fails to consider the episodic nature of Brett's mental illness and how it impacted his ability to perform work on a sustained basis. The record as a whole demonstrates that Brett continued to struggle with his depression and anxiety. Further, even when Brett's symptoms did improve for a time, he continued to demonstrate ongoing significant mental symptoms, and therefore, the limited improvements on a temporary basis in Brett's mental health symptoms alone do not undermine Butler's findings.

Second, the ALJ found that the consultative psychologist's findings did not support Butler's conclusions regarding Brett's mental RFC. (R. 21). On February 22, 2017, Robert Watson, Psy.D., performed a mental status evaluation. *Id*. at 453-58. During the interview, Brett's mood was anxious, depressed, and panicky. *Id*. at 455. On examination, Brett displayed normal cognitive function and thought process with a good fund of basic information, intact immediate and remote memory with mild impairment in recent memory, and no signs of any thought disorder, psychosis, racing thoughts, delusions, hallucinations, or paranoia. *Id*. at 455, 457. Dr. Watson diagnosed moderate features of major depressive disorder in partial remission, moderate-to-severe features of generalized anxiety disorder, and moderate alcohol use disorder, reportedly in sustained remission. *Id*. at 458. Dr. Watson did not assess Brett's functional limitations based on the findings of his evaluation.

The ALJ summarized this evidence in his decision but did not explain how it demonstrates that Butler's opinions were entitled to little weight or why he favored Dr. Watson's opinions over LPC Butler's opinions. *Id*. at 19, 21. Dr. Watson's findings do not necessarily translate into an

14

ability to work full-time on a sustained basis, and the ALJ did not explain why this one 30-minute examination undercuts Butler's opinions. *Punzio*, 630 F.3d at 710 ("a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition."). For example, it is not apparent, and the ALJ failed to explain, why Dr. Watson's examination findings are inconsistent with Butler's opinion that Brett would miss more than three days of work each month. Moreover, Dr. Watson did not provide any opinions about Brett's specific functional limitations. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (consultative examiner's "evaluation did not include a *functional* assessment of [claimant's] abilities, nor did she opine about any limitations [claimant's] impairments may have caused, so her report could not be used to support specific limitations included in [claimant's] residual functional capacity."). Therefore, it is unclear how the ALJ concluded that Dr. Watson's evaluation was inconsistent with Butler's particular functional restrictions.

The Court recognizes that an ALJ need only minimally articulate his reasoning, but the minimal articulation standard does not mean that "any reason, if minimally articulated, automatically justifies the ALJ's discounting of a [medical source's] opinion." *Stocks v. Saul*, 844 F. App'x 888, 892 (7th Cir. 2021). "The ALJ must still support his conclusions with 'substantial evidence.'" *Id*. And an ALJ is required to consider all relevant medical evidence, which "is crucial when assessing mental illness because [a claimant] will have better days and worse days." *Id*. at 893. In this case, that means the ALJ was required to confront the overall medical record which revealed that Brett experienced cycles of improvement combined with periods of worsening mental health symptoms, including deteriorations resulting in hospitalizations. For example, the ALJ had to explain why he believed Butler's opinion that Brett's mental symptoms rendered him likely to absent from work more than three times a month was inconsistent with Butler's treatment

15

notes and the overall medical record demonstrating recurrent cycles of waxing and waning psychological symptoms. The Court cannot trace the ALJ's reasoning without an explanation from the ALJ connecting the overall episodic nature of Brett's symptoms and his lack of sustained improvement over the period at issue to the ALJ's decision to reject Butler's opinions based on improvement. As a result, Brett's temporary improvements with treatment and medication and Dr. Watson's single assessment which did not offer an opinion on Brett's ability to perform work on a sustained basis do not provide substantial evidence to disregard Butler's conclusions.

For these reasons, the Court finds that the ALJ's assessment of LPC Butler's opinions is not supported by substantial evidence. The vocational expert testified that an individual absent from work twice a month is unable to sustain full-time employment. (R. 48-49). The ALJ's rejection of Butler's opinions was therefore not harmless to the ultimate non-disability determination and requires remand. On remand, the ALJ must properly evaluate Butler's opinion in light of the record as a whole and the episodic nature of Brett's chronic mental conditions. Moreover, he must evaluate Butler's opinion in accordance with the factors outlined in 20 C.F.R. § 404.1527(c).[2]

Because the errors regarding the ALJ's assessment of Butler's opinions are dispositive, the Court need not discuss the other issues raised by Brett. But, for purposes of remand, the Court

---

[2] Brett argues that reversal and an award of benefits, as opposed to remand, is the appropriate remedy here. When reviewing a denial of disability benefits, a court may "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). When an ALJ's decision is not supported by substantial evidence, the Seventh Circuit has "held that a remand for further proceedings is the appropriate remedy unless the evidence before the court compels an award of benefits." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). Thus, an award of benefits is appropriate only where "all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id*. Because factual issues remain unresolved in this case, including a reevaluation and reweighing of Butler's opinions in accordance with the regulatory factors and reassessment of the RFC, the record does not conclusively support a finding of disability. A remand is required for the ALJ to more thoroughly and accurately analyze Butler's opinions in conjunction with the evidence as a whole and articulate his analysis.

notes another concern with the ALJ's decision.  The ALJ gave "some weight" to the third-party statement by Brett's mother.  Brett's mother completed a third-party statement in January 2017, in which she explained, among other observations, that "[d]aily existence is a struggle as [Brett] has extreme anxiety and he is emotionally breaking down." (R. 193).  The ALJ discounted Brett's mother's statement regarding his activities of daily living because "she is not a medical professional or treating source." *Id* at 21.  The ALJ's stated reason, standing alone, for affording partial weight to Brett's mother's statement is not a valid reason for discounting a third-party opinion. *Dunn v. Saul*, 794 F. App'x 519, 523 (7th Cir. 2019) ("the ALJ's explanation that he discounted the daughter's testimony because she was not a medical professional does not adequately explain his decision to give little weight to her testimony."); *Steven L. v. Saul*, 2021 WL 1531603, at *4 (N.D. Ill. Apr. 19, 2021); *Sylvia C. v. Saul*, 2020 WL 1189290, at *8 (N.D. Ill. Mar. 12, 2020).  On remand, the ALJ shall properly consider this lay witness statement.

## CONCLUSION

For these reasons, the Court reverses the ALJ's decision, denies the Commissioner's motion for summary judgment [17], and pursuant to sentence four of 42 U.S.C. § 405(g), remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Dated:  June 29, 2021

Sunil R. Harjani
United States Magistrate Judge